**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **SCOTTSDALE INSURANCE COMPANY as** | § | |
| **Subrogee of M.S. Neans Masonry, Inc. a/k/a** | § | |
| **Neans Masonry, Inc.,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CASE NO. 1:16-CV-1312-SS** |
| | § | |
| **AMERICAN MERCURY INSURANCE** | § | |
| **COMPANY,** | § | |
| **Defendant.** | § | |

---

### DEFENDANT AMERICAN MERCURY INSURANCE COMPANY'S OBJECTIONS AND RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE SAM SPARKS:

COMES NOW, Defendant **AMERICAN MERCURY INSURANCE COMPANY** ("Mercury"), pursuant to Local Rule CV-7(e), and files this, its Objections and Response to Plaintiff's Motion for Summary Judgment, and respectfully shows the Court as follows:

## I. SUMMARY OF RESPONSE

Plaintiff Scottsdale Insurance Company ("Scottsdale") filed this insurance action against Mercury to declare coverage for and the right to recover 100% of the post-tender defense and settlement dollars purportedly paid on behalf of its named insured, Neans Masonry, Inc. ("Neans"),[1] in an underlying construction defect suit ("Construction Defect Suit").[2] Scottsdale is seeking summary judgment thereon ("Scottsdale MSJ").[3] Mercury denies Scottsdale's right to such relief, as a matter of law, having filed its own motion for summary judgment ("Mercury

---

[1] *See* Scottsdale's First Amended Complaint [Doc. #22].
[2] *See* Mercury Appendix, Exhibit A-2 (Cat Hollow's Original Petition) [Doc. #32-2]; and Exhibit A-2 (Continental's Third Party Petition) [Doc #32-3].
[3] *See* Scottsdale MSJ [Doc. #34].

MSJ") which Mercury adopts and incorporates herein for all purposes.[4]   Alternatively, Mercury responds that there are one or more genuine issues of material fact precluding the Court's grant of the Scottsdale MSJ.  Specifically, Mercury responds that:

- as intended and written, the "additional insured" endorsement in question plainly and unambiguously confers coverage to a putative "additional insured" only for liabilities arising *before* the named insured's work for that "additional insured" is complete, as a matter of law;

- applying the plain and unambiguous language of the "additional insured" endorsement in question to the operative pleadings here, Mercury had no duty to defend Neans in the Construction Defect Suit, as a matter of law;

- there are genuine issues of material fact as to both the factual and legal basis for, as well as the reasonableness of, Scottsdale's claimed right of reimbursement from Mercury for 100% of its post-tender defense costs and 100% of its settlement dollars purportedly paid in the Construction Defect Suit, on Neans' behalf; and/or

- under clear precedent and the Mercury Policies' plain and unambiguous "other insurance" provisions, Mercury is not primarily liable, if at all liable, for Scottsdale's costs to defend and/or settle the Construction Defect Suit, as matter of law.

Scottsdale's MSJ should therefore be DENIED, and Mercury's own MSJ accordingly and correspondingly GRANTED, in all respects.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[5]   If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for

---

[4] *See* Mercury MSJ [Doc. #32].  *See also* Mercury's First Amended Answer and Counterclaim [Doc. #23].
[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

trial.[6]  "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[7]   In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party.[8]

### III. SUMMARY JUDGMENT PROOF

Notice is given pursuant to FED. R. CIV. PROC. 56 that, together with the pleadings on file and discovery exchanged, Mercury intends to rely on the exhibits identified in and attached to its Index of Appendix ("Mercury Appendix") filed in support of Mercury's MSJ.[9]   Mercury adopts and incorporates the same herein, for all purposes.

Mercury objects to Scottsdale's summary judgment evidence attached at Exhibits B-1 through B-6 to Scottsdale's MSJ to the extent the effective dates of coverage are misstated.[10]

### IV. ARGUMENTS, AUTHORITIES, AND OBJECTIONS

A.   **As intended and written, the "additional insured" endorsement plainly and unambiguously confers coverage to a putative "additional insured" only for liabilities arising *before* the named insured's work for that "additional insured" is complete.**

Under Texas law, "additional insureds" are strangers to an insurance policy and thus bear

---

[6] *Littlefield v. Forney Indep. Sch. Dist.,* 268 F.3d 275, 282 (5th Cir.2001) [internal citations omitted].

[7] *DIRECTV Inc. v. Robson,* 420 F.3d 532, 536 (5th Cir.2005) [internal citations omitted].

[8] *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.,* 336 F.3d 410, 412 (5th Cir. 2003); *Tamez v. Manthey,* 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[9] *See* Mercury MSJ [Doc. #32] and Index of Appendix [Doc. #32-1, including Exhibits A-1 to A-9 [Doc. #32-2 to 32-12]; Exhibits B-1 to B-2 [Doc. #33-3 to 33-4] (filed under seal); and Exhibit C, with attached Exhibits C-1 to C-6 [Doc. #32-13 to 32-32].

[10] *See* Scottsdale's MSJ at Section III and compare to Mercury's MSJ Exhibit C [Doc. #32-13], Affidavit of L. Giusto, setting forth effective dates of coverage for Mercury Policies.

the burden of proving their status as such.[11]   Neans seeks coverage as a putative additional insured under a series of commercial general liability policies issued by Mercury ("Mercury Policies")[12] to various individuals allegedly contracted *by Neans* to perform masonry work on the Cat Hollow Project ("Mason Workers").[13]   More particularly, Neans seeks coverage under Endorsement CG 20 10 10 93 to the Mercury Policies, which amends the standard "Who Is An Insured" provisions contained therein to include "as insureds the person or organization shown in the Schedule, *but only with respect to liability arising out of your ongoing operations performed for that insured.*"[14]   Scottsdale argues that the phrase "ongoing operations" is ambiguous because it is undefined and subject to more than one reasonable construction.[15]   Mercury disagrees, as have a notable number of other federal and state courts.[16]

As Texas construes insurance contracts under general rules of contract construction,[17] policy terms must be given their plain, ordinary, and generally accepted meaning *unless the policy itself shows that the parties intended the terms to have a different, technical meaning.*[18] Where, as here, the claim involves an approved, standard-form policy, the meaning of its undefined terms are to be determined based upon their "everyday meaning to the general

---

[11] *Republic Nat'l Bank of Dallas v. Nat'l Bankers Life Ins. Co.,* 427 S.W.2d 76, 80 (Tex. App. - Dallas 1968, writ ref'd n.r.e.).

[12] *See* Mercury Appendix [Doc #32-1], at Exhibit C, and attached Exhibits C-1 through C-6 (Mercury Policies) [Doc. #32-13 to 32-32].

[13] *See* Mercury Appendix [Doc #32-1], at Exhibit A-4 (Neans tender letters [Doc. #32-5]). *See also* Scottsdale Appendix [Doc 35], at Exhibit G-1 (mason subcontracts [Doc. #35-34 to 35-35]).

[14] *See* Mercury Appendix [Doc. #32-1], at Exhibit C, and attached Exhibits C-1 through C-6 (Mercury Policies) [Doc. #32-13 to 32-32] (italics supplied).

[15] *See* Scottsdale MSJ [Doc. #34], at ¶V.A.

[16] *See* Mercury MSJ [Doc. #32], at ¶VIII.A.

[17] *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987); *Am. Nat'l Gen. Ins .Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001).

[18] *Puckett v. U.S. Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex. 1984) (italics supplied).

public."[19]   "An ambiguity does not exist...simply because the parties interpret a policy differently."[20]   As the Texas Supreme Court has explained: "An interpretation that gives each word meaning *is preferable to one that renders one surplusage*."[21]   The policy construction proffered by Scottsdale would do just that – i.e., render the endorsement's "ongoing" limitation meaningless surplusage.

Specifically, relying on an unpublished Ninth Circuit opinion decided under Arizona law, Scottsdale contends that the "ongoing operations" language can reasonably be construed to confer "additional insured" status whenever there is merely a causal connection between the named insured's operations and the property damage involved, even if the putative additional insured's liability for that property damage does not occur until the named insured's operations are completed.[22]   However, as previously briefed in Mercury's MSJ,[23] there are a significant number of jurisdictions and courts that have disagreed,[24] finding that the endorsement's "ongoing operations" language plainly and unambiguously refers instead to *only* those operations "actually in process," thereby specifically precluding "coverage to additional insureds for 'bodily

---

[19] *Fiess v. State Farm Lloyds,* 202 S.W.3d 744, 746 (Tex. 2006); *Progressive Cty. Mut. Ins. Co. v. Sink,* 107 S.W.3d 547, 551 (Tex. 2003).

[20] *Tetra Technologies, Inc. v. Continental Ins. Co.*, 814 F.3d 733, 747 (5th Cir. 2016) (Tex.); *Am. Home Assurance Co. v. Cat Tech L.L.C.*, 660 F.3d 216, 220 (5th Cir. 2011) (Tex.).

[21] *U.S. Metals, Incorporated v. Liberty Mutual Group, Incorporated*, 490 S.W.3d 20, 23-24 (2015) (italics supplied).

[22] *See* Scottsdale MSJ [Doc. #34] at ¶V.A.2 (citing *Tri-Star Theme Builders, Inc. v. OneBeacon Ins. Co.*, 426 Fed. Appx. 506, 510-12 (9th Cir. 2011)).

[23] Mercury MSJ [Doc. #32], at ¶VIII.A.

[24] *See Carl E. Woodward, L.L.C. v. Acceptance Indem. Ins. Co.*, 743 F.3d 91, (5th Cir. 2014) (Miss.); *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 958–59 (10th Cir. 2011) (Colo.); *Chatelain v. Fluor Daniel Construction Co.*, 179 So.3d 791 (La. App. 2015); *H. Noble v. Wellington Associates, Inc.*, 145 So.3d 714, 718-21 (Miss. App. 2013), *reh'g denied* (April 15, 2014); *Hartford Ins. v. Ohio Cas. Ins.*, 189 P.3d 195, 201–02 (Wash. App. 2008); *Weitz Co., LLC v. Mid Century Ins. Co.*, 181 P.3d 309, 314 (Colo. App. 2007); *Pardee Constr. Co. of the West,* 92 Cal. Rptr.2d 443 (Cal. App. 2000); and *AIX Specialty Ins. Co. v. Universal Cas. Co.*, 2014 WL 12599325, *12-13 (S.D. Tex. July 30, 2014) (unpublished).

injury or property damage' after the work to be performed by or on behalf of the additional insured has been completed."[25]

*Tri-Star* has notably been recognized by commentator and court alike as having "limited," if any, effect, even within its own circuit (Ninth Circuit) and applicable state law (Arizona).[26]   In fact, *Tri-Star* has been specifically rejected instead – as "limited foreign and outdated contrary authority" – in favor of the policy construction advanced here, by Mercury.[27]

The crux of the parties' coverage dispute was squarely before the Washington appeals court in *Hartford Ins. v. Ohio Cas. Ins.*[28]   Rejecting the approach advanced by Scottsdale, the Washington court concluded that the inclusion of the "ongoing operations" term in the additional insured endorsement indicates an express intent to provide coverage to the additional insured only for liability that arises while the work *is still in progress.*[29]

The *Tri-Star* analysis, and thus Scottsdale's approach, was again and even more recently rejected in *Noble v. Wellington Assocs., Inc.*, wherein the Mississippi appeals court made clear that "in order for 'ongoing operations' *to have any meaning*, it cannot encompass liability arising

---

[25] *See Weitz,* 181 P.3d at 314-315 ("[A]dditional insureds," in other words, "are not covered with respect to liability in connection with completed projects.").

[26] *See* Gary L. Johnson, *ADDITIONAL INSUREDS UNDER CG 20 10, Understanding the Scope of Ongoing Operations Coverage,* 58 No. 5 DRI For Def. 27 (May, 2016) (noting that not only is *Tri-Star* of no binding precedence within its own circuit, but that its analysis has been rejected both within and outside the Ninth Circuit, as well as by the Arizona appellate court in *Colorado Cas. Ins. Co. v. Safety Control Co.,* 288 P.3d 764 (Ariz. Ct. App. 2012) (adopting, instead, the definition of "ongoing operations" set forth in *Hartford*, *supra*)).  *See also Davis v. Liberty Mut. Group*, 814 F.Supp.2d 1111 (W.D. Wash. 2011) (finding the *Hartford, supra* approach "exceedingly persuasive"); and *Evanston Ins. Co. v. Westchester Surplus Lines Ins. Co.,* 451 Fed. Appx. 672 (9th Cir. 2011) (also relying on *Hartford*, *supra*, in construing the "ongoing operations" limitation).

[27] *Absher Const. Co. v. North Pacific Ins. Co*., 861 F.Supp.2d 1236, n.6 (W.D. Wash. 2012).

[28] 189 P.3d 195, 201-202 (Wash. App. 2008) [internal citations omitted].

[29] *Id.* [italics supplied].

after the subcontractor's work was completed."[30]  The *Noble* court rejected the construction advanced by Scottsdale that would trigger "additional insured" coverage simply because the defects or damages involved could arguably be traced back to the named insured's active operations.[31]  The court found that to accept such an interpretation, it "would have to read the word 'ongoing' out of the endorsement," which would "contradict the plain and unambiguous language of the endorsement."[32]

Siding with and citing *Noble*, the Fifth Circuit subsequently and formally agreed in its 2014 published opinion, *Carl E. Woodward, L.L.C. v. Acceptance Indemnity Ins. Co.*,[33] in interpreting "ongoing operations."[34] Because the complained of construction defect liability did not arise out of the subcontractor's ongoing operations, but rather its completed operations, and there were notably no allegations to the contrary, the endorsement's "ongoing operations" requirement was not and could not be met.[35]

Agreeing such allegations are key to triggering the operative endorsement language, the Southern District of Texas followed suit in *AIX Specialty Ins. Co. v. Universal Cas. Co.*, finding in that instance the "ongoing operation" requirement, as construed in *Woodward* and *Noble*, was sufficiently triggered, *but only by allegations specifying that the named insured's work had caused damage to other, non-defective work or property, before completion*.[36]

Here, the Construction Defect Suit contains no such allegations – i.e., no allegations of any non-mason work or product damage caused by the Mason Workers' work before their work,

---

[30] *Noble*, 145 So.3d at 719 [italics supplied].
[31] *Id*.
[32] *Id*. at 720 (citing *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 958–59 (10th Cir. 2011) with approval) [italics supplied].
[33] 743 F.3d 91 (5th Cir. 2014) (Miss.) (citing both *Noble* and *Weitz*).
[34] *Id*. at 98.
[35] *Id*. at 98-101.
[36] 2014 WL 12599325, *11-13 (S.D. Tex. Jul. 30, 2014).

or the Project generally, was complete.[37]   The Construction Defect Suit was filed, instead, "after construction" of the Cat Hollow Project "was completed,"[38] for alleged "deficiencies" in its construction.[39]   Under the above authorities, the policy interpretation arguments advanced by Scottsdale are contrary to the relevant endorsement's plain and unambiguous terms, warranting the Court's denial of the Scottsdale MSJ and grant of the Mercury MSJ, as a matter of law.

**B.    Applying the plain and unambiguous language of the "additional insured" endorsement to the operative pleadings, as a matter of law, Mercury had *no* duty to defend Neans in the Construction Defect Suit, as it wholly fails to allege any involvement of Mercury's named insureds or their operations, as required to trigger any potential "additional insured" liability coverage as sought by Neans.**

Whether or not the Court accepts Scottsdale's contentions regarding the "additional insured" endorsement's intended and/or expressed scope, the operative lawsuit allegations do not trigger Mercury's defense obligations in the Construction Defect Suit as a matter of Texas law, further demonstrating Scottsdale's failure to meet its burden of proving Neans' "additional insured" status under the Mercury Policies.[40]   Under Texas' "eight corners" or "complaint allegation" rule, the trier-of-fact must examine only the allegations contained in the complaint and the relevant insurance policy to determine whether a defense duty exists.[41]   To that end, "[t]he duty to defend is typically not affected by facts ascertained before suit, developed in the

---

[37]   *See* Mercury Appendix [Doc #32.1], Exhibits A-1 and A-2 (Construction Defect pleadings [Doc #32-2 and Doc 32-3]).

[38]   *See* Mercury Appendix [Doc #32.1], Exhibit A-2 (Continental's Third Party Petition in the Construction Defect Suit [Doc #32-3]), at ¶III.

[39]   *See* MSJ Appendix [Doc #32.1], Exhibit A-1 (Cat Hollow's Original Petition in the Construction the Defect Suit [Doc #32-2]), at ¶22.

[40]   *Argonaut S.W. Ins. Co. v. Maupin*, 500 S.W.2d 633 (Tex. 1973).

[41]   *Gulf Chemical & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993).   *See also Baldwin v. Aetna Casualty & Surety Co.*, 750 S.W.2d 919, 921 (Tex. App. - Amarillo 1988, writ denied); *Gonzales v. American States Ins. Co.*, 628 S.W.2d 184, 187 (Tex. App. - Corpus Christi 1982, no writ) (as a result, the truth or falsity of an allegation is said to be of no significance or consequence in a coverage determination).

process of litigation, or by the ultimate outcome of the suit."[42]  The court may therefore not "read facts into the pleadings," "look outside the pleadings, or imagine factual scenarios [that] might trigger coverage."[43]  Here, Scottsdale is asking the Court to do just that – i.e. look to contracts and evidence wholly extrinsic to the underlying lawsuit petitions to supply the facts required to trigger Mercury's defense obligations in the Construction Defect Suit.[44]

Specifically, Scottsdale is asking the Court to look beyond the underlying pleadings to determine whether Neans is entitled to a defense as an "additional insured" under the Mercury Policies because, as Scottsdale notably concedes, the underlying construction defect suit "does not allege the specific dates when the subcontractors' work was performed or when the property damage occurred."[45]  Scottsdale argues that the lack of such pleadings warrants an exception to Texas' otherwise strict adherence to the above "duty to defend" analysis because, among other things, the evidence "does not engage in the truth or falsity of any fact alleged."[46]  Scottsdale is mistaken.  Without resorting to extrinsic evidence, the allegations of the Construction Defect Suit indisputably fail to trigger the "additional insured" coverage sought by Neans, as a matter of law, at least for purposes of defense.

---

[42] *American Alliance Ins. Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 154 (Tex. App. - Dallas 1990, writ dism'd); *see also Guide-One Elite Ins. Co. v. Fielder Baptist Church*, 197 S.W.3d 305 (Tex. 2006) (refusing to allow the consideration of any extrinsic evidence that goes to both coverage questions and the merits of underlying suit); and *Pine Oak Builders, Inc. v. Great American Lloyds Ins. Co*., 279 S.W.3d 650, 653-656 (Tex. 2009) (clarifying that extrinsic evidence that contradicts the allegation of the underlying petition may not be considered in determining whether a defense obligation exists even when the extrinsic evidence is offered by the insured).

[43] *Pine Oak,* 279 S.W.3d at 655 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc*., 939 S.W.2d 139, 42 (Tex. 1997).  In contrast, of course, is the duty to indemnify which is based not on the allegations of any petition, but on the facts underlying the claim or action that actually result in the assessment of liability.  *See Heyden Newport Chem. Corp. v. Southern General Insurance Company,* 387 S.W.2d 22, 25 (Tex. 1965); *Am. Alliance Ins. Co. v. Frito-Lay, Inc.,* 788 S.W.2d 152, 153 (Tex. App. -  Dallas 1990, writ dismissed).

[44] *See* Scottsdale MSJ [Doc. #34], at ¶V.B.

[45] *See id*. at ¶V.B.5.

[46] *Id.* at ¶V.B.4 and 5.

To trigger any such coverage here, Scottsdale must establish that the face of the operative Construction Defect Suit pleadings assert not only an "occurrence" of "property damage" during one or more of the relevant policy periods, but that Neans' liability, as alleged therein, arose out of the Mason Workers' "ongoing operations" for Neans.[47]  This, as detailed in Mercury's MSJ,[48] is simply not the case, as there are absolutely *no* lawsuit allegations linking (1) the named insureds, or their work, to any of the complained of construction defects; or, (2) Neans' alleged liability for same due to those named insureds' operations – ongoing or otherwise, as is needed to trigger the subject "additional insured" coverage.[49]  The absence of such pleadings does not authorize Scottsdale's reliance on the extrinsic evidence it offers to establish those facts (contracts and expert testimony establishing the date or dates on which Mercury's named insureds purportedly worked *for Neans* on the underlying construction project), as the same very clearly contradicts the facts actually alleged in the lawsuit – i.e. that the operations giving rise to Continental's alleged liability were performed by Continental's and/or Neans' subcontractors for Continental (not by Neans' subcontractors for Neans).[50]

In *Pine Oak Builders, Inc. v. Great American Lloyds Insurance Co.,* the Texas Supreme Court rejected consideration of extrinsic evidence which was different from the allegations in the underlying pleading under the "eight corners" rule.[51]  In explaining its decision, the Court stated:

> The policy imposes no duty to defend a claim that might have been alleged but

---

[47] Being a coverage grant, rather than exclusion, it is Scottsdale, not Mercury, who bears the burden of bringing those underlying allegations within the endorsement's purview.  *Telepak v. United Servs. Auto. Ass'n,* 887 S.W.2d 506, 507 (Tex. Civ. App. - San Antonio 1994, writ denied).

[48] *See* Mercury MSJ [Doc. #32], at ¶VIII.A.

[49] *See id.*; and Mercury Appendix [Doc. #32-1], Exhibits A-1 through A-3 (Construction Defect Suit petitions [Doc #32-2 and #32-3]).

[50] *See* Scottsdale Appendix [Doc. #35], Exhibit G (Declaration of Terry Neans [Doc #35-33]); and G-1 (Mason Worker contracts [Doc #35-34 and #35-35]).

[51] *Pine Oak*, 279 S.W.3d at 653-55.

was not, or a claim that more closely tracks the true factual circumstances surrounding the third-party claimant's injuries but which, for whatever reason, has not been asserted. To hold otherwise would impose a duty on the insurer that is not found in the language of the policy."[52]

The underlying allegations complain of Continental's work and that of Continental's subcontractors, among which is Neans.[53]  They do not complain of or otherwise implicate the work of Neans' *own* subcontractors.[54]  The "duty to defend" arguments advanced by Scottsdale therefore also fail, as a matter of law, further warranting the Court's denial of the Scottsdale MSJ, and granting of the Mercury MSJ.

**C.    There are genuine issues of material fact as to the factual and legal basis for, as well as the reasonableness of, the defense and settlement dollars paid by Scottsdale, and thus Scottsdale's corresponding right to any reimbursement of same from Mercury.**

The burden to establish coverage under an insurance policy rests with the insured.[55]  On this, Texas law is unequivocal.[56]   When an insured settles claims, some of which may be "covered" and others that are "uncovered," it can thus not recover full indemnity, as Scottsdale seeks to do, but rather bears the burden of allocating its settlement between those covered and non-covered claims.[57]  Scottsdale has not and cannot meet that burden here.

---

[52] *Id.* at 655–56.  To the extent Scottsdale argues that *Woodward* supports the consideration of extrinsic evidence in determining the duty to defend, that case was based on Mississippi law which, *unlike Texas*, requires the consideration of facts developed in the insurer's independent investigation that potentially implicate coverage. 743 F.3d 91. at 96-97.

[53] *See* Mercury Appendix [Doc. #32-1], Exhibits A-1 (Cat Hollow's Original Petition in the Construction Defect Suit [Doc 32-2]); and Exhibit A-2 (Continental's Third Party Petition in Construction Defect Suit [Doc #32-3]).

[54] *Id.*

[55] *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.,* 143 F.3d 192, 193 (5th Cir.1998) (citing); *see also Employers Cas. Co. v. Block,* 744 S.W.2d 940, 944 (Tex. 1988), *overruled in part on other grounds, State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696 (Tex. 1996).

[56] *See Block,* 744 S.W.2d at 944 (insured has burden to prove it meets all conditions for coverage under a policy of insurance); *Gov't Employees Ins. Co. (Geico) v. Lichte,* 792 S.W.2d 546, 544 (Tex. App. - El Paso 1990), *writ denied per curiam,* 825 S.W.2d 431 (1991) (noting that an insured cannot recover unless the insured pleads and proves facts which show that his damages are covered by the policy).

[57] *See Enserch Corp. v. Shand Morahan & Co., Inc.,* 952 F.2d 1485, 1494 (5th Cir. 1992) (Tex).

In Texas, insurance settlement amounts are allocated based on the "concurrent causes" doctrine.[58]  Under the doctrine of concurrent causes, when covered and non-covered perils combine to create a loss, the insured is entitled to recover that portion of the damage caused solely by the covered peril.[59]  The doctrine of concurrent causation is not an affirmative defense or an avoidance issue.[60]  It is, instead, "a rule embodying the basic principle that insureds are not entitled to recover under their insurance policies *unless they prove their damage is covered by the policy*."[61]  "Because the insured can recover only for covered events and perils, the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof."[62]  *Said allocations are to be based upon the evidence on which the underlying settlement was based*.[63]  The failure to segregate covered and non-covered damages is "fatal to recovery."[64]  Mercury therefore has *no* duty to indemnify Scottsdale for any payments not *demonstrably* attributable (i.e. allocated) to claims and/or damages covered under its Policies.  Nor does Mercury owe any reimbursement for costs that Scottsdale is primarily or

---

[58] *Cooper Indus. LLC v. Am. Int'l Specialty Lines Ins. Co.,* 350 F. App'x 876, 878 (5th Cir. 2009) (*per curiam*) (unpublished) (citing *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins.,* 130 S.W.3d 181, 198 (Tex. App. - Houston [14th Dist.] 2003, pet. denied) (applying the doctrine to claims arising from the deaths of two employees)).

[59] *See Dallas National Ins. Co. v. Calitex Corp.,* 458 S.W.3d 210 (Tex. App. – Dallas 2015, no pet.); *Allison v. Fire Ins. Exchange,* 98 S.W.3d 227, 258 (Tex. App. - Austin 2002, no pet.); *State Farm Fire & Cas. Co. v. Rodriguez,* 88 S.W.3d 313, 320–21 (Tex. App. - San Antonio 2002, pet. denied).

[60] *Allison,* 98 S.W.3d at 258.

[61] *Comsys*, 130 S.W.3d at 198.

[62] *Calitex Corp.*, 458 S.W.3d at 222 (citing *Wallis v. United Servs. Auto Ass'n*, 2 S.W.3d 300,303 (Tex. App. – San Antonio 1999, pet. denied).

[63] *Am. Int'l Specialty Lines Ins. Co. v. ResCare, Inc.,* 529 F.3d 649, 656 (5th Cir. 2010) (citing *Enserch,* 952 F.2d at 1494). "In a dispute between an insurer and its insured concerning an underlying settlement that may have included both covered and non-covered claims under the insurance policy, it is appropriate for the district court to make findings necessary to apportion the settlement between damages that the insurer owes and damages for which the insured has a duty to pay." *Enserch*, 952 F.2d at 1494.

[64] *Calitex*, 458 S.W.3d at 222 (citing *Comsys*, 130 S.W.3d at 198).

---

co-primarily liable for under Texas law.

**1.     Scottsdale has failed to allocate the underlying settlement dollars purportedly paid to settle Neans' liability in the Construction Defect Suit between covered and uncovered claims.  Among other things, payments for costs to repair or replace the Mason Workers' own work and/or products are not covered under the Mercury Policies, and thus not recoverable under the Mercury Policies.**

First, the summary judgment proof on which Scottsdale admittedly based its settlement with Continental establishes that not only some, but a significant portion, of the damages sought from Neans was to repair damages to the Mason Workers' *own* work or product on the Cat Hollow Project.[65]   Scottsdale relies on: 1) an August 20, 2015 report prepared by Nelson Forensics observing damages to the underlying construction project's stone veneer work, and recommending that 100% of the same be repaired and/or replaced;[66] 2) the Affidavit of Kerry S. Lee, P.E., opining that the complained of construction defects included (despite there being no underlying allegations of same) damage to the building's exterior that began as soon as the Mason Workers' performed their work;[67] and 3) the Affidavit of Lee Shidlofsky ("Shidlofsky Affidavit"), summarizing the expert opinions regarding "problems associated with the work performed by Neans and its subcontractors" and stating "no real dispute existed that the work

---

[65] *See* Scottsdale MSJ [Doc #34], at ¶¶V.C through E; and Scottsdale Appendix [Doc #35], Exhibits H through L [Doc #35-36 through Doc #35-40]; Exhibit T (filed under seal). Mercury disputes the findings and opinions contained in this Exhibit and expressly reserves its right to dispute same, for all purposes, relying on them here only to demonstrate the evidence on which Scottsdale purports to have settled the underlying construction defect suit.

[66] *Id. at* Exhibit H [Doc. #35-36], at Section 2 (observing numerous defects in and resulting repairs needed to the building's stone veneer and lintel work); Scottsdale MSJ [Doc. #34], at ¶¶D and E.

[67] *Id.* at Exhibit I [Doc. #35-37]. Mercury disputes the findings and opinions contained in this Exhibit, for all purposes, relying thereon only to demonstrate the evidence on which Scottsdale purports to have settled the underlying construction defect suit; Scottsdale MSJ [Doc. #34], at ¶¶D.5 and E.

performed by Neans and its subcontractors was deficient and that, in turn, caused damage."[68]

Such evidence triggers application of one or more of the Mercury Policies' "business risk" exclusions, as a matter of law.[69]   More particularly, Exclusions 2(j) "Damage to Property," 2(k) "Damage to Your Product," and 2(l) "Damage to Your Work" of the Mercury Policies combine to preclude coverage for such damages, in whole or in part.[70]   The underlying settlement, however, makes absolutely *no* distinction or allocation relative to those excluded damages.[71]   Nor has Scottsdale appropriately allowed for any deductions from its indemnity payments therefore.[72]   Rather than support its right to reimbursement from Mercury, Scottsdale's summary judgment proof actually provides further evidence that its settlement included amounts to repair the Masons Workers' own work or product, which are excluded under the Mercury Policies.[73]

---

[68] *Id*. at Exhibit T (filed under seal).

[69] *See* Mercury MSJ [Doc. #32], at ¶¶VII.C.2.

[70] *See* Mercury Appendix [Doc. #32-1] at Exhibits C-1 to C-6 (Mercury Policies) [Doc. #32-14 to 32-32] at Section 1, Exclusions 2 (CG 00 01 12 07) (defining the terms "you" and "your" to refer to the Mercury Policies' named insureds, i.e. the Mason Workers); Section V, Definitions at (16) "Products-completed operations hazard;" (21) "Your product;" and (22) "Your work."

[71] There is, instead, summary judgment evidence estimating that the cost to repair or replace the Mason Workers' own work or product may have totaled as much as ninety-six percent (96%) of the underlying Continental Settlement sum.  *See* Mercury Appendix [Doc. #32-1], Exhibit A-8 (Synergen Report of August 14, 2015 [Doc #32-11]), at Attachment 1.  In fact, the Shidlofsky Affidavit, submitted by Scottsdale, relies upon such estimates as evidence of the underlying settlement's reasonableness. *See* Scottsdale Appendix, Exhibit T (filed under seal). Mercury disputes the findings and opinions contained in this Exhibit, for all purposes, relying thereon only to demonstrate the evidence on which Scottsdale purports to have based its settlement.

[72] *See* Scottsdale MSJ, at ¶V.C.6 (seemingly acknowledging the existence of uncovered, as well as potentially covered, damages relative to the Construction Defect Suit).

[73] Although the Scottsdale Policies include similar "business risk" exclusions, the exclusions do not apply to work performed by a subcontractor (i.e., the Mason Workers) on the named insured's (Neans) behalf.  *See* Mercury Appendix [Doc. #32-1] at Exhibit A-6 (Scottsdale Policies) [Doc. #32-7 to 32-9] at Section 1, Coverage A, Exclusion 2(l) "Damage to Your Work."  Therefore, while costs to repair the Mason Workers' work and product would have been excluded under the Mercury Policies, they would not have been excluded under the Scottsdale

Scottsdale has consequently failed to demonstrate what portion, if any, of its settlement was for claims covered under the Mercury Policies.[74]   The absence of same is fatal to Scottsdale's recovery from Mercury.  Whether or not the sum paid was more or less than Neans' *potential* exposure in the case, as the Scottsdale MSJ purports to establish, is of no significance as it has no bearing on what, if any, portion was paid to settle *covered* damages.[75]

**2.      Scottsdale has failed to establish that 100% of the underlying settlement dollars purportedly paid in the Construction Defect Suit were to settle Neans' liability arising out of the ongoing operations of Mercury's named insureds for Neans during the relevant Mercury Policies.**

Second, the underlying settlement for which Scottsdale maintains Mercury is 100% responsible *plainly states* that the monies paid thereunder were to settle both the underlying Construction Defect Suit against Neans *and the separate coverage litigation filed by Continental against Scottsdale relative to that suit.*[76]  The settlement was therefore not only of Neans' alleged liability, *but of Scottsdale's own liability*.  Because the settlement makes no allocation among those alleged liabilities, it cannot be said to have been reached or paid in sole settlement of the Construction Defect Case or Neans' liability alone.[77]  Any subsequent assertions by Scottsdale to the contrary, like the affidavit testimony of its corporate representative Bruce Canade, are not only in direct contradiction of the underlying settlement agreement, but without independent or corroborating proof.  In this regard, Mercury objects to the Affidavit of Bruce Canade, attached as Exhibit R to Scottsdale's MSJ, as conclusory and, as such, improper summary judgment

---

Policies.  Based on the summary judgment evidence cited by Scottsdale, it appears Scottsdale's settlement with Continental included same.

[74] *Rodriguez,* 88 S.W.3d at 320–21.

[75] *See* Mercury MSJ [Doc. #32], at ¶VIII.C.2.

[76] *See* Mercury Appendix [Doc. #32-1], Exhibits B-1 B-2 (Cat Hollow Settlement and Continental Settlement (filed under seal) [Doc #33-3 and Doc #33-4]).  *See also* Scottsdale Appendix [Doc. #35], Exhibits M and N (filed under seal).

[77] *Id.*

evidence.[78]

Further, although Scottsdale seeks reimbursement from Mercury of 100% of the settlement it paid to Continental,[79] Scottsdale itself avers that a portion of the settlement was paid for Neans' *own* contractual indemnity owed to Continental.[80]  Scottsdale appears to admit this portion of the settlement was for Neans' own, independent contractual assumptions in the Cat Hollow Project, not based on the Mason Workers' operations for Neans, ongoing or otherwise, or Neans' liability for same.[81]  Although Scottsdale agrees to deduct the same from its indemnity claims herein, the total sum thereof has also not been demonstrably established by any independent or other corroborating testimony.  In this regard, Mercury further objects to the Affidavit of Bruce Canade, as conclusory and, as such, improper summary judgment evidence.[82]

There are, therefore, genuine issues of material fact precluding Scottsdale's right to reimbursement of the indemnity dollars purportedly "paid on Neans' behalf" in settlement of the Construction Defect Suit, precluding the granting of Scottsdale's MSJ, as a matter of law.

> **3.  Scottsdale has failed to conclusively establish the necessity, reasonableness and/or amount of post-tender defense costs incurred to defend Neans from the claims against it in the Construction Defect Suit.**

Finally, Scottsdale concedes to having no right of recovery against Mercury of its pre-tender costs to defend Neans in the Construction Defect Suit – i.e. pre-September 16, 2015 defense costs.[83]  Scottsdale has failed, however, to conclusively establish the reasonableness, necessity and/or amount of its purported post-tender costs to defend Neans therein.

Specifically, Scottsdale seeks to recover said costs as actual damages for Mercury's

---

[78] *See* Scottsdale Appendix [Doc #35], Exhibit R (filed under seal) [Doc #36].

[79] *See* Scottsdale's First Amended Complaint at ¶31 [Doc. #22].

[80] *See* Scottsdale MSJ, at ¶V.F.3 [acknowledging its indemnity payments included such sums, for which it is not seeking indemnity].

[81] *Id.*

[82] *See* Scottsdale Appendix [Doc #35], Exhibit R (filed under seal) [Doc #36].

[83] *See* Scottsdale MSJ [Doc #34], at ¶V.F.3.

alleged breach of its duty to defend Neans in the Construction Defect Suit.  Attorney's fees sought as actual damages must still be both reasonable and necessary.[84]  Scottsdale has offered no conclusive evidence thereon.  Rather, Exhibits Q, Q-1, Q-2 and U to the Scottsdale MSJ, offered to establish Scottsdale's recoverable defense costs, are wholly inadmissible for such purposes.  Mercury therefore objects to the same and requests that they be stricken from the summary judgment record for all purposes.

Exhibit Q is the "Affidavit of Loni Borgognone" ("Borgognone Affidavit"), a Claims Specialist with Nationwide E&S/Specialty that purportedly adjusts claims for Scottsdale.[85]  Exhibits Q-1 and Q-2 are a collection of redacted invoices ("Invoices") from Daw & Ray, LLP ("Daw & Ray"), Neans' defense attorneys in the Construction Defect Suit.[86]  Loni Borgognone ("Borgognone") is not, and does not attest to being a Daw & Ray attorney.  Borgognone also does not attest to being a custodian of those Invoices *for Daw & Ray*; or, to being one with knowledge of the manner in which the Daw & Ray Invoices were prepared *by Daw & Ray*.[87]  Borgognone therefore has no personal knowledge of the Daw & Ray Invoices; or, of the work Daw & Ray did in the Construction Defect Suit.[88]  The Invoices, which have thus not been properly offered as business records or otherwise authenticated,[89] are inadmissible hearsay.[90]

---

[84] *See* A*merican Home Assur. Co. v. United Space Alliance, LLC*, 378 F.3d 482, 490 (5th Cir. 2004) (Tex.) (citing *Southwestern Indemnity Co. v. National Surety Corp.,* 277 F.2d 545, 549 (5th Cir. 1960); *Powell v. Narried,* 463 S.W.2d 43, 46 (Tex. Civ. App. - El Paso 1971, writ ref'd n.r.e.); *Lesikar v. Rappeport,* 33 S.W.3d 282, 306 (Tex. App. - Texarkana 2000, pet. denied).

[85] *See* Scottsdale Appendix [Doc. #35], at Exhibit Q.

[86] *See* Scottsdale Response [Doc. #53], at Exhibit R.

[87] *Id*.

[88] *See* FED. R. CIV. P. 56(c)(4).

[89] The proponent of hearsay evidence has the burden of showing that the testimony fits within an exception to the general rule.  *See Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004).  *See also* FED. R. EVID. 803(6) (requiring "...that either the custodian of the business records or 'other qualified witness' lay a foundation before the records are admitted"); *United States Commodity Futures Trading Commission v. Dizona,* 594 F.3d 408, 415 (5th Cir.2010)

Borgognone's testimony that the Invoices reflect "...the attorney's fees and costs expended to defend Neans in [the Construction Defect Suit] from September 16, 2015 to May 19, 2017," is also conclusory and, like the Invoices themselves, without legal or factual foundation.

With regard to the reasonableness and necessity of the subject defense costs, such determinations are to be predicated upon the factors identified by the Texas Supreme Court in *Arthur Anderson & Company v. Perry Equip. Corp.,* 945 S.W.2d 812 (Tex. 1997) and *El Apple I, Ltd. v. Olivas,* 370 S.W.3d 757(Tex. 2012).[91]    The "Lodestar" calculation formula frequently used in federal court to calculate the reasonableness of attorneys' fees provides additional guidance on what proof must be presented by a party seeking attorneys' fees.[92]    The Borgognone Affidavit is notably (and completely) silent in all such respects.[93]    Neither can the reasonableness and necessity of the fees sought be gleaned from the Invoices themselves.[94]    Although the Invoices note the rates charged for and time spent on particular tasks, the description of those tasks are overly vague and/or redacted making it impossible to not only discern the nature, complexity, need, efficiency and/or reasonableness of many of the claimed legal fees, but whether or not the same were in fact incurred to defend Neans in the Construction Defect Suit and not to pursue insurance coverage or other affirmative relief for Neans therein.    In this regard,

---

(quoting *United States v. Brown,* 553 F.3d 768, 792 (5th Cir.2008), *cert. denied,* 558 U.S. 897, 130 S.Ct. 246, 175 L.Ed.2d 168 (2009); Tex. R. Evid. 803(6); and *In re E.A.K.,* 192 S.W.3d 133, 141 (Tex. App. - Houston [14th Dist.] 2006, pet. denied)).

[90] *See* Tex. R. Evid. 801(d), 802; and Fed. R. Evid. 801 and 802.

[91] Tex. Disciplinary R. of Prof. Conduct 1.04; *see also Omni USA, Inc. v. Parker Hannifin Corp.*, 964 F. Supp. 2d 805, 842 (S.D. Tex. 2013) (noting the determination of reasonable attorneys' fees under Texas law is virtually identical to the factors used by the Fifth Circuit as set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

[92] *See generally, Todd v. AIG Life Insurance Company*, 47 F3d 1448 (5th Cir. 1995); *Watkins v. Fordice*, 7 F3d 453 (5th Cir. 1993); and *Dibler v. Midwest, Inc.*, 1997 WL 222910 (N.D. Tex. April 29, 1997) (general discussion of the Lodestar concept applied by federal courts in Texas).

[93] *See* Scottsdale Appendix [Doc. #35], Exhibit Q [Doc #35-45].

[94] *See* Scottsdale Appendix [Doc. #35], Exhibit Q-1 and Q-2 [Doc #35-46].

the Texas Supreme Court has made clear: "[I]f any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." "[I]t is *only* when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated."[95]

Exhibit U to the Scottsdale MSJ is an "Attorney's Fees Report" by Daw & Ray's lead counsel in the Construction Defect Suit, Thomas Valentine ("Valentine").[96]  Although Valentine sets forth the rates charged therein, and the bases for his opinion regarding the reasonableness of those rates, he offers absolutely no testimony regarding the amount of fees or expenses actually incurred, pre- or post-tender, by Scottsdale to defend Neans from the mason-related damage claims in the Construction Defect Suit.[97]  Valentine also fails to attach or otherwise authenticate any evidence of those litigation costs either as Daw & Ray business records, or otherwise.[98]

Scottsdale has therefore failed to establish the amount of its post-tender defense costs to defend Neans from the mason-related damage claims in the Construction Defect Suit, warranting the denial of Scottsdale's MSJ and grant of Mercury's MSJ thereon.

**D.    Mercury is not primarily liable, if at all liable, for Scottsdale's costs to defend and/or settle the Construction Defect Suit, and thus the summary judgment Scottsdale seeks thereon must fail, as matter of law.**

As set forth in Mercury's MSJ,[99] and acknowledged in Scottsdale's MSJ, under Texas law, if two policies are reasonably subject to conflicting constructions, the conflicting provisions are to be disregarded and liability apportioned between both insurers on a *pro rata* basis.[100]  The

---

[95]   *Tony Gullo Motors, L.L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006).
[96]   *See* Scottsdale Appendix [Doc. #35], Exhibit U [Doc #35-50].
[97]   *Id*.
[98]   *Id*.
[99]   Mercury MSJ at VIII.B.2.
[100]   *Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 444 S.W.2d 583, 590 (Tex. 1969).  "If both policies provide coverage, and priority is uncertain, liability is prorated between

Fifth Circuit, applying Texas law, has held the same.[101]  Scottsdale's argument is that the Fifth Circuit, and its progeny, simply got it wrong.[102]

The Mercury Policies state: "This insurance is primary…If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in c. below."[103]  The Scottsdale Policies state they are to be primary unless there is other primary insurance available, at which time they will apply excess "over any other insurance, whether primary, excess, contingent or on any other basis."[104]

Where comparing a primary policy's "pro rata clause" (here, the Mercury Policies) to a primary policy's "excess clause" (here, the Scottsdale Policies), the Fifth Circuit has consistently held the provisions to be mutually repugnant, and thus that defense and indemnity are owed on a *pro rata* basis.[105]  In *Royal Insurance Co. of America v. Hartford Underwriters Insurance Co*., the Fifth Circuit concluded that "other insurance" clauses which are virtually identical to those at issue in this case were conflicting, and therefore determined both insurers were liable

---

the insurers." *Cont'l Cas. Co. v. N. Am. Capacity Ins. Co.,* 683 F.3d 79, 93 (5th Cir. 2012) (citing *Hardwood Dealers*, 444 S.W.2d at 589).

[101] *Royal Ins. Co. v. Hartford Underwriters Ins. Co*., 391 F.3d 639 (5th Cir. 2004) (using *Hardware Dealers* to find conflict between *pro-rata* and excess clauses even where a reading harmonizing the clauses on the facts involved was admittedly "plausible").  *See Willbros RPI, Inc v. Continental Cas. Co*., 601 F.3d 306 (5th Cir. 2010); and *Travelers Lloyds Ins. Co. v. Pac. Emplrs. Ins. Co*., 602 F.3d 677, 687 (following *Royal*, *supra*).  *See also Millis Development & Const., Inc. v. America First Lloyd's Co*., 809 F.Supp.2d 616, 634 (S.D. Tex. 2011) (finding *pro rata* allocation appropriated under the circumstances there).

[102] *See* Scottsdale MSJ [Doc. #34], at ¶F.

[103] *See* Mercury Appendix [Doc #32-1], Exhibits C-1 through Exhibit C-6 (Mercury Policies) [Doc. #32-14 to 32-32], at Section IV.4.a "Other Insurance." The provision states the Mercury Policies are primary except where Paragraph b. applies; however, Paragraph b. does not appear to apply in this matter.

[104] *See* Mercury Appendix [Doc #32-1], Exhibit A-6 (Scottsdale Policies) [Doc. #32-7 to 32-9].

[105] *See Willbros*, 601 F.3d 306 (5th Cir. 2010); *Royal,* 391 F.3d 639; *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.,* 78 F.3d 202 (5th Cir. 1996).

proportionally.[106]   As discussed in *Royal*, from the viewpoint of the insured, the insured had coverage under each policy if the other policy did not exist.[107]   Therefore, the Fifth Circuit found that a reasonable construction of the two policies from this standpoint yielded a conflict, and both insurers were liable proportionally.[108]   Scottsdale incorrectly contends that the Fifth Circuit has misapplied *Hardware Dealers,* and in doing so, argues for an overly narrow application of *Hardware Dealers* which the Fifth Circuit has expressly cautioned against.[109]   *Royal* and its progeny are "the settled law of this circuit."[110]

Therefore, even if and/or to the extent the Mercury Policies may be found to apply relative to the Construction Defect Suit, which Mercury disputes, Scottsdale has failed to establish Mercury primarily liable for the sums sought – i.e., either 100% of its purported post-defense and/or purported settlement dollars paid therein, as a matter of law.[111]   The Scottsdale MSJ must therefore fail, entitling Mercury to a grant of its MSJ herein.

## V. **PRAYER**

**WHEREFORE, PREMISES CONSIDERED,** Defendant American Mercury Insurance Company prays that the Court DENY Plaintiff Scottsdale Insurance Company's Motion for Summary Judgment against it, as set forth herein; or, alternatively, on those claims the Court deems proper, and for such other and further relief, at law and in equity, as the Court deems just and right.

---

[106] *Royal Ins. Co. v. Hartford Underwriters Ins. Co.*, 391 F.3d 639 (5th Cir. 2004); *St. Paul Mercury Ins. Co.*, 78 F.3d at 206.
[107] *Id*. at 644.
[108] *Id*.
[109] *Id*. at  643-44 (cautioning "against applying overly narrow constructions of the *Hardware Dealers* rule" and citing *St. Paul Mercury Ins. Co.*, 78 F.3d at 210 n. 25).
[110] *See Willbros*, 601 F.3d at 314 (concurring opinion) (noting "...we are bound by [*Royal, supra*] because it is the settled law of this circuit....").
[111] *L'Atrium On The Creek I, L.P.*, 326 F.Supp.2d at 792-93.

Respectfully submitted,

MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.

By: /s/ Leslie T. Tan
        Christopher W. Martin
        State Bar No. 13057620
        Federal Bar No. 13515
        martin@mdjwlaw.com
808 Travis, 20th Floor
Houston, Texas 77002
Telephone:  (713) 632-1700
Facsimile:  (713) 222-0101

**ATTORNEY-IN-CHARGE FOR DEFENDANT
AMERICAN MERCURY INSURANCE
COMPANY**

OF COUNSEL:

Leslie T. Tan
State Bar No. 24046998
Federal Bar No. 635202
tan@mdjwlaw.com
808 Travis, 20th Floor
Houston, Texas 77002
Telephone:  (713) 632-1700
Facsimile:  (713) 222-0101

## CERTIFICATE OF SERVICE

      I certify that a copy of the foregoing *Defendant American Mercury Insurance Company's Response to Plaintiff's Motion for Summary Judgment* has been served on all counsel of record via e-mail correspondence and ECF this 12th day of April, 2018.

Peri K. Alkas                         *Via E-mail and ECF*
Ashley M. Parker
PHELPS DUNBAR, L.L.P.
500 Dallas, Suite 1300
Houston, Texas 77002

                          /s/ Leslie T. Tan
                          Leslie T. Tan